Robert D. ASHLEY, Appellant,

v.

Coy W. EDWARDS, Appellee.

No. C2761.

Court of Appeals of Texas,
Houston (14th Dist.).

Nov. 27, 1981.

Larry A. Anderson, Anderson & Anderson, Crosby, for appellant.

Andrew C. Brown, Brown, Bradshaw & Plummer, Houston, for appellee.

Before MILLER, MURPHY and MORSE, JJ.

MORSE, Justice.

This case arose from an agreement for the sale and purchase (on credit) of a used semi-trailer. Appellant-purchaser brought suit against appellee-seller to recover damages and statutory penalties under the Texas Usury Laws, the Deceptive Trade Practices Act, the Certificate of Title Act, the Texas Debt Collection Act and the Federal and Texas Truth in Lending Acts. Upon trial to the court, judgment was entered awarding appellant $200 damages for mental anguish, but failing to find a violation of

said Acts. Appellant has appealed, submitting seven points of error. We affirm in part and reverse in part and remand for trial.

Appellant, a self-employed truck driver, contacted appellee, a sand-pit operator, and sought to purchase on credit terms a used 1965 Fruehauf semi-trailer. After some discussion the parties agreed upon a price of $4,000 to be paid out in one year, with a down payment of $800 to be paid "in about two weeks." Appellee's wife drew up the following document on both sides of a printed promissory note form:

100—PROMISSORY NOTE TEXAS STANDARD FORM THE ODEE COMPANY PUBLISHERS DALLAS

$ 4,000.00 Houston, _____,Texas,_____ May 27 _____ A. D. 19 77

_____ Robert Ashley _____ _____ _____ after date, for value received,
I, we, or either of us, the undersigned, promise to pay to the order of
_____ Coy W. Edwards
Four Thousand and no/100 _____Dollars
at 310 Drumcliffe Houston, Texas _____with 9 _____per cent interest per annum from
_____ May 27, 1977 _____until paid.

AND IN THE EVENT DEFAULT IS MADE IN THE PAYMENT OF THIS NOTE AT MATURITY AND IT IS PLACED IN THE HANDS OF AN ATTORNEY FOR COLLECTION, OR SUIT IS BROUGHT ON THE SAME, OR SAME IS COLLECTED THROUGH BANKRUPTCY OR PROBATE PROCEEDINGS, THEN THE UNDERSIGNED AGREE THAT AN ADDITIONAL AMOUNT OF TEN PER CENT ON THE PRINCIPAL AND INTEREST THEN DUE HEREON SHALL BE ADDED TO THE SAME AS COLLECTION FEES.

$ 800.00 due 6-13-77
DUE 323.64 on 7-1-77 and each month thereafter
for eleven months. (5-1-78) Robert D. Ashley
ADDRESS
PHONE

Bill of Sale on reverse side

BILL OF SALE May 27, 1977

I, Coy W. Edwards agree to sell to Robert Ashley one 1965 Fruehauf semi/trailer dump, s/n FWE 227901, for the sum of Four Thousand and no/100 Dollars . The amount to be paid on note dated 5-27-77 until paid in full. Robert Ashley agrees to carry $250.00 deductible comprensive (up-set) insurance on said trailer until note is paid in full, it is agreed that there will be a ten day grace period on late payment or cancellation of insurance after which time lapses Coy Edwards will have recourse of repossession or collection of note as per terms stated in this note.

Coy W. Edwards

Robert Ashley

Appellant testified that appellee and his wife did "some figuring on the interest on a calculator" and "then wrote ever how much the total amount of interest was and typed it on the note." No expert assistance was obtained in the calculations or the composition of the document, which the parties signed as indicated. Appellant took possession of the semi-trailer, but appellee retained his certificate of title. Using personal checks, appellee paid $800.00 down payment on June 14, 1977 and $323.64 on July 16, (cashed July 21) on August 8, (cashed August 11) and on September 18, (erroneously marked "Insufficient Funds" by the bank on first presentation and later cashed September 23). Appellant's wife had made a late afternoon deposit not credited to their account until September 19. Appellant obtained a cashier's check for the same

amount from the bank on September 22, and delivered it by leaving it in appellee's pick-up truck and it was cashed on November 3. The total amount paid was $2,094.56.

When the bank had refused payment on the third installment check, appellee had gone to appellant's house with his brother, who wore his constable's badge and gun, and asked for the return of the trailer. During a fifteen minute discussion that evening in the presence of appellant's wife and children, they became upset and appellant cried. The trial court found that appellee's demands caused apprehension, fear or mental anguish to appellant and his wife, who substantially precipitated both the demands and visit. The court concluded they were entitled to damages for mental anguish partially caused by appellee. The court found when properly apportioned such damages should not exceed $200, for which the court gave judgment to appellant.

Appellant never acquired the agreed deductible comprehensive (upset) insurance on the trailer, never returned the trailer and on advice of counsel made no further payments. Appellant filed suit asserting six causes of action, alleging [1] violation of Art. 5069–1.06(1) and (2)[1] by contracting for interest at 21 percent per annum, in excess of the 10 percent legally allowable under the circumstances, seeking double the amount of the interest, forfeiture of all principal, and attorney's fees, [2] violation of the Certificate of Title Act (Art. 6687–5) by failure to deliver the certificate of title with possession of the vehicle, seeking requirement of delivery of the certificate or adjudication of title, [3] violation of the Texas Debt Collection Act (Art. 5069–11.01 et seq.), seeking at least $4,000 in damages plus attorney's fees, [4] or, in the alternative, *violation of the Federal Truth in Lending Act* (15 U.S.C.A. § 1601 et seq.) seeking actual damages and mental anguish of $4,000 plus $720 as double the finance charge, plus attorney's fees, [5] or violation of the Texas Truth in Lending Act (Art. 5069–14.01) by failing to ascertain the true

percentage rates of interest, seeking twice the finance charge of $720 and attorney's fees, and [6] violation of the Texas Deceptive Trade Practices Act (17.41 et seq. Tex. Bus. & Com.Code Ann.) by the above stated violations and "unconscionable actions" and misrepresenting the interest rate and that title would not pass immediately, seeking treble damages, title to the trailer and to void the note.

After trial before the court without a jury on October 22, 1980, the court entered judgment on December 15, that appellant recover $200 from appellee as damages for mental anguish, appellant return the trailer by November 11, or pay appellee $1,995.10, and appellee refund to appellant $2,094.56 if the trailer was returned or deliver the appellant title certificate if the trailer was retained and appellant paid the balance; costs were awarded as incurred and all other relief denied. At the request of appellant, the trial court made findings of fact and conclusions of law. These did not state exactly what payments were contracted for or whether any mistakes or errors had been made in the amounts specified. The trial court found that appellee applied the payments made at 9 percent interest until the stated due dates for the down payment and first four installments, and that a principal balance of $1,995.10 remained unpaid.

On appeal, appellant asserts seven points of error. The first four were related to the failure of the trial court to find that appellee *contracted for* usurious interest of 21 percent per annum (1) as a matter of law, (2) against the greater weight and preponderance of the evidence, and (3) with no evidence to support the finding on appellee's application of payments as 9 percent interest charged, and (4) in failing to award appellant double the amount of interest *contracted for*, refund of all *principal paid*, and prejudgment interest. Appellant's fifth and sixth points complain of failure to find violation of the Deceptive Trade Practices Act contrary to the greater weight and preponderance of the evidence and failure to award actual damages, treble dam-

---

1. All references to statutes are to Tex.Rev.Civ. Stat.Ann.

ages, attorney's fees and prejudgment interest thereunder. Appellant's point seven complains of the court's failure to award him title to the semi-trailer or require delivery of the title certificate.

Appellant, in clarifying his contentions during oral argument, conceded that appellee has not received or charged usurious interest, thereby limiting his contentions to appellant's assertedly *contracting for* usurious interest. As a result, his third point of error is immaterial. Appellant has not sought to rescind the transaction because of violation of the Texas Title Certificate Act, has not pursued on appeal any further remedy than damages awarded him by the court below under the Texas Debt Collection Act or any remedy under the Federal Truth in Lending Act or the Texas Truth in Lending Act.

■ Appellant's first four points of error, relating to usury, will be considered together. It is correctly stated that the mere "contracting for" usurious interest is in violation of the usury statutes even though no interest was actually collected. *Tanner Development Co. v. Ferguson*, 561 S.W.2d 777 (Tex.1977). Where the parties agree to a specific payment schedule, the calculation of an agreed rate of interest is purely a matter of mathematics, regardless of the percentage rate stated on the face of the instrument. *Ustick v. Jones*, 130 Tex. 620, 112 S.W.2d 703 (1938); *Braniff Inv. Co. v. Robertson*, 124 Tex. 524, 81 S.W.2d 45 (1935). Furthermore, if the contract is unambiguous upon its face, the court cannot depart from the terms of the contract to make legal what the parties have made unlawful. *Shropshire v. Commerce Farm Credit Co.*, 120 Tex. 400, 30 S.W.2d 282 (1930). Intent in usury cases does not mean intent to charge a usurious rate of interest, but means the intent to make the bargain made. *Cochran v. American Savings & Loan Association of Houston*, 586 S.W.2d 849 (Tex.1979); *Townsend v. Adler*, 510 S.W.2d 175 (Tex.Civ.App.—Houston [14th Dist.] 1974, no writ). The subjective intent of the parties is normally immaterial in determining whether there is usury since

the intent of the parties is presumed to be reflected in the documents which they sign. *Johns v. Jaeb*, 518 S.W.2d 857 (Tex.Civ.App. —Dallas 1974, no writ). According to *Shropshire, supra*, the true test is whether the contract, if performed according to its terms, would result in a greater rate of interest than that allowed by law.

The purported promissory note involved in this case is ineptly worded and ambiguous upon its face. In *Wall v. East Texas Teachers Credit Union*, 533 S.W.2d 918 (Tex.1976) the court said the ineptly drawn note's terms could be reasonably determined, and it decided that plaintiff could only recover the principal amount construed as established, less twice the amount found to constitute usurious interest under the promised installment payments found. That cannot be done in the case before us. The only express unequivocal promise upon the face of the instrument states: "... The undersigned, promises to pay to the order of Coy W. Edwards Four thousand and no/100 dollars... with 9 percent interest per annum from May 27, 1977 *until paid*." [Emphasis added]. The payment schedule typed at the bottom of the instrument seems to indicate how the debt is to be repaid, but there is no express promise to pay according to the schedule. Normally, where the parties agree to a specific payment schedule, it determines the rate of interest as being usurious or not, regardless of the percentage rate stated on the face of the instrument. *Ustick v. Jones, supra; Braniff Inv. Co. v. Robertson, supra*. In both the *Ustick* and the *Braniff Inv. Co.* cases, the parties had expressly promised to make payments according to the payment schedule included in the note. The court in each case, faced with deciding which promise was dominant, evolved the above rule of construction. However, in our case, where there is not an express promise to pay according to the payment schedule, the rule of construction as stated in the *Ustick* and *Braniff Inv. Co.* cases does not apply.

Therefore, in the case presently before us, it becomes necessary to consider the testimony of the parties as to their intent in

order to determine whether a meeting of the minds was reached, whether an agreement was made, and if so, what the parties contracted for. The parties' testimony showed that they both agreed that the appellant would pay appellee $4,000 with nine percent interest. However, appellant also stated that he "understood" that he had to make eleven payments of $323.64 each after the $800 down payment, and appellee admitted that it was his intention to receive eleven installments of $323.64 each, thinking that he was "figuring the interest rate properly." He said he later found out that he had "made a mistake." Appellee further testified, "we had agreed that nine percent *was the interest rate" and continued to* state that if appellant had prepaid the note prior to the last installments, "I would have expected him to just pay the balance of what was due on it." After the rejected check for the September 19, 1977 payment was honored by the bank appellee held up cashing the cashier's check for an additional installment until after the first of November. Taken with the provision in the "Bill of Sale" that ". . . the sum of $4,000 and no/100 dollars. The amount to be paid on note dated 5/27/77 until paid in full," there is evidence indicating that the appellee's intent was simply to collect the balance due rather than all of the eleven or twelve installments scheduled (which are not unequivocally *promised* to be paid). However, there is nothing in the record to show that appellee actually applied payments as found by the trial court or that appellant's agreement was so qualified or limited by any objective manifestation of intent other than the agreed 9 percent rate, which would be contradicted by the apparently agreed payments. These resulted in a greater amount, unless reformed.

Appellee's answer alleged that "because of a mutual mistake of material fact, both plaintiff and defendant erroneously computed interest applicable and created an ambiguity in the promissory note" and seeks correction of the ambiguity to specify the last installment as $106.69 instead of $323.64. The answer did not in such words allege "accidental and bona fide error,"

which is set out as a possible defense under Art. 5069–1.06[1]. No finding of mistake, error or accident was made by the trial court, nor was there any express finding as to what payments the agreement of the parties called for. Neither was there any adjudication of reformation.

Payments were not required by the agreement of the parties until the expiration of ten days after the stated "due" dates. As a result, computation of the interest contracted for amounts to slightly less than 19.4 percent, even if it were assumed that the parties had contracted for the payment of $800 down and eleven $323.64 installments (without modification pursuant to prepayment or completion of the collection of the principal sum due).

 Even though payments might be made during the ten day grace period it would not be contractually required. Under *Greever v. Persky,* 140 Tex. 64, 165 S.W.2d 709 (1942), acceptance of payments made voluntarily, rather than as required by the contract, are not sufficient for usury. The existence of a contractual obligation is an essential element of the violation. *Continental Savings & Building Ass'n v. Wood,* 33 S.W.2d 770 (Tex.Civ.App.1930), *aff'd,* 56 S.W.2d 641 (Tex.Comm'n.App.1933). The scheduled payments apparently contemplated pursuant to the agreement at the times allowed *by the terms of the instrument* amount to interest at less than 19.4 percent, and accordingly do not exceed twice the lawful interest rate of 10 percent so as to constitute a violation of Art. 5069–1.06(2). Therefore there is no basis for a forfeiture of principal, but at most a liability for twice the amount of the interest contracted for and attorney's fees. Appellant's first, second and fourth points of error are accordingly overruled in part as they relate to art. 5069–1.06(2).

In *Guetersloh v. C.I.T. Corporation,* 451 S.W.2d 759 (Tex.Civ.App. Amarillo 1970, writ ref'd n. r. e.) it was held that where the payments as a result of a small error exceeded the legally permissible rate of interest the court could *reform the instru-*

ment to follow the intent of the parties to charge the legal maximum rate of 10 percent. Similarly, in this case the trial court, pursuant to the appellee's pleading of mutual mistake, could have reformed the instrument to provide for installments of only $304.88 to provide 9 percent per annum interest on the balance from time to time until the completion of the payments, on the assumption that payments were made on the first of each month or that interest on the greater balance resulting from deferral of payment during the ten day grace period is to be waived.

 There was evidence introduced without objection upon which the defense of "accidental and bona fide error" could have been deemed tried by consent despite the lack of pleadings expressly directed towards that statutory defense, as opposed to "mutual mistake of material fact" and "erroneously computed interest" and "ambiguity in the note," which were pled. However there were no findings upon which to base affirming the trial court's judgment upon that theory. Accordingly, we sustain in part appellant's first, second and fourth points of error and we remand for a retrial of the issues relevant to possible reformation of the note, including such defensive issues.

It is therefore not necessary for us to pass on appellant's fifth and sixth points of error as to whether the greater weight and preponderance of the evidence required reversal of the trial court's judgment for failure to find a violation of Art. 5069–1.06(1), or of § 17.50 of the Tex.Bus. & Com.Code Ann. by reason of stating a 9 percent interest rate. Until the terms of the agreement can be determined there can be no decision as to whether a misrepresentation of the interest rate has occurred in violation of the Texas Deceptive Trade Practices Act. Neither "unconscionable actions" nor other violations of § 17.50 were otherwise shown by evidence which required reversal. Appellee made no appeal as to the $200 adjudged to appellant for mental anguish and such damages are not "actual damages" recoverable under the Deceptive Trade Practices Act.

*Brown v. American Transfer & Storage Co.,* 601 S.W.2d 931 (Tex.1980).

With regard to appellant's point seven, Art. 6687–1 does not provide any private cause of action other than for recission, which was not sought by appellant as a result of the appellee's failure to deliver the title certificate on the semi-trailer along with possession.

Upon retrial of the issues and determination of what the parties contracted for and whether same was usurious and whether any violation of the Texas Deceptive Trade Practice Act occurred, a judgment can be entered which is neither contingent, conditional or alternative, but which is based upon the existing facts and the election of appellant to retain the semi-trailer, no tender of its return having been made.

We affirm in part and reverse and remand in part for trial.